# EXHIBIT A

FILED
TARRANT COUNTY
5/15/2025 3:33 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____    067-364611-25

| | | |
|---|---|---|
| **DONNA CAROL FERNIHOUGH** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **VS.** | § | **TARRANT COUNTY, TEXAS** |
| | § | |
| **ACCLARENT, INC.,** | § | |
| **INTEGRA LIFESCIENCES CORPORATION,** | § | |
| **PRECISION CONCEPTS, LLC**, and | § | |
| **PCB TECHNOLOGIES USA INC.** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

**1.**     DONNA CAROL FERNIHOUGH files this her original petition complaining of ACCLARENT, INC., INTEGRA LIFESCIENCES CORPORATION, PRECISION CONCEPTS, LLC, and PCB TECHNOLOGIES USA INC. in their legal, assumed, or common names (hereafter also referred to cumulatively as "DEFENDANTS"), and for cause of action alleges as follows:

### PARTIES

**2.**     DONNA CAROL FERNIHOUGH (also hereafter referred to  "PLAINTIFF") is currently a citizen and resident of Tarrant County, Texas.

**3.**     ACCLARENT, INC. (hereafter also referred to as "ACCLARENT") is a corporation organized under the laws of Delaware. ACCLARENT is the actual or legal manufacturer, developer, assembler, distributor, and marketer of the PRODUCTS IN QUESTION and was the actual or legal manufacturer, developer, assembler, integrator, distributor, and marketer of the PRODUCTS IN QUESTION used in the procedure in question on DONNA CAROL FERNIHOUGH.  ACCLARENT has had continuous business contacts with and in the State of Texas. It has purposely availed itself of the privilege of conducting business in Texas and has targeted Texas for the sale,

***DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al***
**Plaintiff's Original Petition**                                                                                       **Page 1 of 58**

Copy from re:SearchTX

distribution, and use of its products, including the PRODUCT IN QUESTION. The occurrence in question arises from these purposeful business strategies and activities, including the targeted marketing, distribution, and sale of the PRODUCT IN QUESTION. ACCLARENT may be served with citation by and through its registered agent for service: CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

4.    INTEGRA LIFESCIENCES CORPORATION (hereafter also referred to as "INTEGRA" is a corporation organized under the laws of Delaware, with its operations nerve center in Plainsboro, New Jersey. INTEGRA has had continuous business contacts with and in the State of Texas. It has purposely availed itself of the privilege of conducting business in Texas and has targeted Texas for the sale, distribution, and use of its products, including the products in question.  The occurrence in question arises from these purposeful business strategies and activities, including the targeted marketing, distribution, and sale of the PRODUCTS IN QUESTION.  INTEGRA reportedly acquired ACCLARENT after the incident in question. It sought and obtained certification as the legal manufacturer of the PRODUCTS IN QUESTION. Further, it is believed that as part of a sale between JOHNSON & JOHNSON (the previous parent corporation of ACCLARENT) and INTEGRA that INTEGRA assumed ownership as well as the responsibilities and liabilities for the products in question and the conduct of ACCLARENT, as well as having assumed such responsibilities and liabilities as the legal manufacturer.  INTEGRA may be served with citation by and through its registered agent for service:  Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

Copy from re:SearchTX

5.      PRECISION CONCEPTS, LLC (hereafter also referred to as "PRECISION") is a corporation organized under the laws of North Carolina, with its operations nerve center in Mebane, North Carolina. PRECISION is the manufacturer, assembler, and distributor of dedicated component parts, navigable devices, guidewires, and cables for the PRODUCTS IN QUESTION, and it calibrates plug and play devices for use with the PRODUCT IN QUESTION.   PRECISION was the manufacturer, assembler, and distributor of dedicated component parts, navigable devices, guidewires, and cables for THE PRODUCTS IN QUESTION used in the procedure in question, and it calibrated the plug and play devices used in the procedure in question for use with the PRODUCT IN QUESTION. PRECISION has had continuous business contacts with and in the State of Texas. It has purposely availed itself of the privilege of conducting business in Texas and has targeted Texas for the sale, distribution, and use of its products, including the products in question.  The occurrence in question arises from these purposeful business strategies and activities, including the targeted marketing, distribution, and sale of its products used in conjunction with the PRODUCT IN QUESTION.  PRECISION may be served with citation by and through its registered agent for service:  CT Corporation System, 160 Mine Lake Ct., Suite 200, Raleigh, NC 27615.

6.      PCB TECHNOLOGIES USA INC. (hereafter also referred to as "PCB") is a corporation organized under the laws of New Jersey, with its operations nerve center in Ocean, New Jersey. PCB is the manufacturer, assembler, and distributor of the Multi Instrument Adapters/ Dongles used with the PRODUCTS IN QUESTION.  PCB was the manufacturer, assembler, and distributor of dedicated Multi Instrument Adapters/ Dongles for the PRODUCTS IN QUESTION used in the procedure in question. PCB has had

Copy from re:SearchTX

continuous business contacts with and in the State of Texas. It has purposely availed itself of the privilege of conducting business in Texas and has targeted Texas for the sale, distribution, and use of its products, including the products in question.  The occurrence in question arises from these purposeful business strategies and activities, including the targeted marketing, distribution, and sale of its products used in conjunction with the PRODUCT IN QUESTION.  PRECISION may be served with citation by and through its registered agent for service: Precision Circuits, Inc. 3321 Doris Avenue, Bldg A, Suite 3, Ocean NJ 07712-4049.

## JURISDICTION AND VENUE

7.     The amount in controversy, exclusive of interest and costs, exceeds the minimal jurisdictional limits of this Court.

8.     For the benefit of court administration and pursuant to Tex. R. Civ. P. 47(c), at this time, PLAINTIFF states that she cannot accurately assess a limit to the damages she has sustained but at this point seeks monetary relief in excess of $1,000,000.00 exclusive of interest and costs.  PLAINTIFF reserves the right to modify or adjust this statement and desires to leave the final determination of damages to the sole province of the jury based upon the credible evidence presented to the jury at trial.

9.     Venue of this action is proper in Tarrant County, Texas since the incident in question occurred in Tarrant County, Texas and the cause of action accrued in whole or in part in Tarrant County, Texas. §15.002(a)(1).

10.     In the event one or more of the DEFENDANTS contend or allege that PLAINTIFF has not filed her claim timely or in conformance with the applicable statute of limitations, PLAINTIFF alleges in response that PLAINTIFF has been impeded in so

Copy from re:SearchTX

complying with such statutes of limitation and other applicable statutory requirements because of fraudulent concealment committed by one or more DEFENDANTS, individually or jointly, of wrongful conduct and spoliation of evidence material to PLAINTIFF's claims.

## FACTS

11.     The ACCLARENT/INTEGRA TruDi Navigation System and its component navigable devices and parts use an integrated navigation system based on electromagnetic tracking and microsensors at the distal tip of its navigable attachments and guidewires to guide ENT surgeons during surgical procedures, particularly when the anatomy or bone blinds the physician to location. ACCLARENT/INTEGRA also designed and manufactured navigable devices including patient trackers, curettes, probes, suctions, Nav wire, shavers, and balloon devices that attach to the navigation system through adapters/dongles and cables manufactured by PRECISION and/or PCB. ACCLARENT/INTEGRA is the manufacturer, developer, assembler, integrator, and marketer of the TruDi Navigation system, its component parts, and navigable attachments that were used in the procedure performed on DONNA CAROL FERNIHOUGH.

12.     The TruDi Navigation System includes pre-calibrated "plug and play" instruments with distal microsensors, including the TruDi NAV Suction, TruDi Curette, TruDi Probe, Patient Tracker, Shaver, Balloon devices with guidewires, cables, emitter pad, hub, computer system, adapters/dongles, and the RELIEVA SPINPLUS® NAV Balloon Sinuplasty System ("Relieva SpinPlus NAV System").  This entire system forms an integrated navigation system, hereafter referred to cumulatively as the "PRODUCT IN QUESTION" or the "PRODUCT."  All the component part attachments employ similarly

Copy from re:SearchTX

designed and manufactured distal microsensors that are intended to be compatible with and are included as part and parcel of the PRODUCT IN QUESTION. ACCLARENT/INTEGRA claimed and then marketed the PRODUCT as providing navigation with consistent, reliable, submillimeter accuracy during ENT procedures such as sinuplasty. ACCLARENT/INTEGRA and its agents marketed the component parts as pre-calibrated "plug and play" components that supposedly can be used with the TruDi Navigation System without any need to recalibrate them before, during, or after use.

14. All these component parts are compatible with and attach to the TruDi Navigation system via cables that plug into adapters/dongles. The software incorporated into and utilized by the PRODUCT IN QUESTION, particularly within the TruDi Navigation System, is updatable and also includes a purported artificial intelligence feature. ACCLARENT/INTEGRA marketed, represented, and promoted these products, particularly when used as an integrated system, as providing consistent, reliable, submillimeter accurate orientation and navigation during procedures such as the one performed on DONNA CAROL FERNIGHOUGH.

14. The PRODUCT IN QUESTION, including its component parts, software, as well as the navigable devices designed to attach to the PRODUCT IN QUESTION through adapters/dongles and cables is an FDA Class III approved medical device whose approval or certification should have been obtained by the FDA before being used during surgical procedures. The PRODUCT IN QUESTION is believed to be FDA approved through the abbreviated FDA 510K procedure, but ACCLARENT/INTEGRA withheld and/or misrepresented key information when interacting with the FDA during this approval process.

Copy from re:SearchTX

15.    From the earliest days in the designing, research, and development of the PRODUCT IN QUESTION, ACCLARENT/INTEGRA knew that there were safety, reliability, consistency, connectivity, electromagnetic interference, and accuracy issues with the product's registration, calibration, orientation, guidance, and navigation functions. For instance, the patient tracker can easily move on the patient's forehead creating inaccuracy of navigation during use, such that the mapping and other features of the product do not provide the degree of precision and accuracy desired and necessary for patient safety. Additionally, ACCLARENT/INTEGRA knew of location inaccuracy issues with multiple devices used with the TruDi Navigation System resulting in the navigation system and the navigable devices not performing as intended and posing a safety risk to patients.

16.    During the cadaver lab testing phase, ACCLARENT/INTEGRA worked closely with Dr. Marc Dean and used his guidance and clinical expertise in developing the TruDi Navigation System and its integrated components. Dr. Dean served as ACCLARENT'S/INTEGRA'S paid consultant, researcher, and agent. Dr. Dean communicated weekly with Jeff Hopkins, who was then the President of ACCLARENT/INTEGRA. Hopkins and ACCLARENT/INTEGRA were intimately and intricately involved with all aspects of the integrated navigation system known as the TruDi Navigation System from development through post market surveillance and evaluation of the PRODUCT.

17.    The FDA issued 510(k) approval of the TruDi Navigation System and its various navigable devices, but ACCLARENT/INTEGRA was not candid with the FDA about known problems or the clinically unacceptable accuracy regarding the TruDi

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                                **Page 7 of 58**

Copy from re:SearchTX

Navigation System and its components. In fact, ACCLARENT/INTEGRA did not disclose the known problems with safety which ACCLARENT/INTEGRA had not corrected as the product components were integrated, tested, and analyzed without correction of any revealed safety problems during post market surveillance. The product continued to be plagued by inaccurate navigation that was so imprecise it failed to meet clinically acceptable levels for safety and efficacy. Jeff Hopkins and ACCLARENT/INTEGRA representatives communicated with the FDA about the integrated ACCLARENT/INTEGRA TruDi Navigation system and, while they acknowledged that accuracy could be off by 2 millimeters, ACCLARENT/INTEGRA characterized the known risk to be "acceptable." ACCLARENT/INTEGRA, with Jeff Hopkins' blessing, embarked on an advertising campaign that extolled the virtues of the TruDi Navigation System as having "sub-millimeter" accuracy – a material misrepresentation about the PRODUCT.

18.     Jeff Hopkins also pushed for the development of a segmentation algorithm/AI to be added to the TruDi Navigation System in 2021 as a marketing tool to claim that ACCLARENT/INTEGRA had new and novel technology. This push was designed to increase market share and profits. Jeff Hopkins, among others at ACCLARENT, consulted Dr. Dean once again in this process. Dr. Dean, however, warned ACCLARENT/INTEGRA and Jeff Hopkins that there were issues that needed to be resolved before incorporating the new segmentation/AI technology in the TruDi Navigation System.   Despite warnings about safety and accuracy concerns, ACCLARENT/INTEGRA lowered its safety standards to rush the new technology to market.  ACCLARENT/INTEGRA set as a goal only 80% accuracy for some of this new

Copy from re:SearchTX

technology before integrating it into the TruDi Navigation System. There is no clinical data showing that 80% accuracy was either safe or effective in the clinical setting.

19. Ignoring all the warnings about inaccuracy in the clinical setting, ACCLARENT, on September 30, 2021, announced the launch of its new "AI-powered ENT technology" in its TruDi Navigation System. This "enhancement" supposedly provided "real-time feedback during ENT navigation procedures", using a "machine learning algorithm" to provide what was touted as reliably accurate navigation for ENT procedures such as the surgery of DONNA CAROL FERNIHOUGH. ACCLARENT/INTEGRA did not seek FDA approval for this new technology before releasing it for use in surgical procedures across the United States which posed a significant risk to public safety.

20. Even before the addition of the AI feature (at least since 2019), ACCLARENT/INTEGRA received numerous complaints regarding the PRODUCT IN QUESTION and components including the TruDi Navigation System, the RELIEVA SPINPLUS® NAV Balloon Sinuplasty System ("Relieva SpinPlus NAV System"), and the pre-calibrated instruments such as the TruDi NAV Suction, TruDi Curette, TruDi Probe, balloon devices, guidewires, cables, and adaptors/dongles. The complaints uniformly noted the PRODUCT and components did not perform as intended and/or were inaccurate resulting in injury to patients as well as near misses (i.e. incidents in which injury was imminent but avoided) during surgery. ACCLARENT/INTEGRA also has been aware of multiple reports of balloon device malfunction, location inaccuracy, artificial intelligence/segmentation/Path to Target issues, and other instances of non-conforming products. It is believed that ACCLARENT/INTEGRA internally compiled many complaints

Copy from re:SearchTX

of incidents that they failed to share with or report to the FDA. Housed in the ACCLARENT/INTEGRA Complaint Database, these other injuries and near miss reports (complaint detail reports) are relevant to ACCLARENT'S prior knowledge of the dangerous design of the PRODUCT IN QUESTION.

21.    Physicians and others, including ACCLARENT/INTEGRA employees, reported to ACCLARENT/INTEGRA complaints and concerns regarding the dysfunction and malfunctions of the PRODUCT IN QUESTION not performing as intended during ENT surgeries, such as sinuplasty procedures. A recurring theme was location inaccuracy, balloon malfunctioning, sensor calibration issues, and inconsistent connectivity between the navigable devices and the TruDi Navigation System leading to problematic use and improper navigation. There also were complaints of artificial intelligence interface problems, failed segmentation, and failed path to target incidents. Despite all this information, ACCLARENT/INTEGRA negligently failed to investigate thoroughly and determine a root cause for the many reports and complaints. Instead, ACCLARENT/INTEGRA characterized the risks as "acceptable" and left a known defective and dangerous medical device on the market, which could not reliably and accurately perform its function to help ENT surgeons safely navigate the known varied sinus anatomy of surgical patients.

22.    ACCLARENT/INTEGRA further failed to exercise ordinary care in warning its customers and the surgeons using the PRODUCT IN QUESTION of the risks known to ACCLARENT.

23.    It is believed that not all the complaints in the ACCLARENT/INTEGRA complaint database were reported to the FDA, and that the MAUDE reports do not

Copy from re:SearchTX

accurately or completely reflect all the complaints of which ACCLARENT/INTEGRA had notice that the PRODUCT IN QUESTION was not performing as intended, contained one or more design defects, and that it posed an unreasonably dangerous risk to patients undergoing ENT procedures. ACCLARENT/INTEGRA knew that these deficiencies, non-conformities, and defects could and did lead to location inaccuracy, misorientation, misdirection, and misguidance which exposed patients to severe injury or death. Further, ACCLARENT/INTEGRA knew of the performance inconsistency and malfunctioning of their balloon devices attachments. Nonetheless, ACCLARENT/INTEGRA characterized these risks as acceptable so that they would not impede its quest to increase its market share in the ENT navigational device field.

24.     ACCLARENT/INTEGRA, the FDA, or both have recalled the PRODUCT IN QUESTION, including various components of the system. ACCLARENT, through its authorized agents, has acknowledged that the multiple recalls deal with the reported complaints of navigational inaccuracy and misdirection, although even the recall efforts failed to fix the issues. These complaints should have put ACCLARENT/INTEGRA on notice of a potential design or manufacturing defect in the PRODUCT IN QUESTION, including the TruDi Navigation System and its component parts and/or the Relieva SpinPlus NAV System with TruDi NAV Suction or in the interface between the two products and their various components and attachments. The recalls are believed to have a common underlying root cause: defectively dangerous, inconsistent, and imprecise navigation of the PRODUCT IN QUESTION during procedures similar to the surgical procedure performed on DONNA CAROL FERNIHOUGH, particularly when using components such as the TruDi NAV Suction and TruDi Curette, guidewires and balloons,

Copy from re:SearchTX

probes, cables, Patient Tracker, and adapters/dongles. This unreasonably dangerous condition occurred during DONNA CAROL FERNIHOUGH's surgery, leading to severe injury. The complaints and recalls from 2019 through the present day regarding the PRODUCT IN QUESTION, its components, and attachments should have provided notice to ACCLARENT/INTEGRA of a systemic root cause problem which they failed to exercise ordinary care in investigating, analyzing, and using to mitigate the risk of harm posed by the unreasonably dangerous condition both before and after the procedure performed on DONNA CAROL FERNIHOUGH.

25.    The PRODUCT IN QUESTION, including "Plug and Play" instrument attachments, balloons, guidewires, adapters, and microsensors, TruDi NAV Suction, ACCLARENT/INTEGRA RELIEVA SPINPLUS® NAV Balloon Sinuplasty System ("Relieva SpinPlus NAV System") and its component parts also have been reported to be improperly calibrated causing tip misorientation and misdirection during surgery, which ACCLARENT/INTEGRA acknowledged in 2021 had the potential to cause "damage to the carotid artery, CSF leak, or damage to the optic nerve." The suction device was again recalled in 2024 by INTEGRA, the legal manufacturer of the PRODUCT IN QUESTION and its attachments, including the suction device. The recall documentation shows that the ACCLARENT/INTEGRA conceded calibration issues could cause injuries, including injuries to the carotid artery such as experienced by DONNA CAROL FERNIHOUGH. The recall demonstrates that there are ongoing, inherent design defects with THE PRODUCT IN QUESTION that make it unreasonably dangerous.

26.    Rather than examining the PRODUCT IN QUESTION from a systematic perspective to determine the root cause of it continuing to experience episodes of loss of

Copy from re:SearchTX

registration, loss of calibration, inconsistent connectivity, location inaccuracy, and failing to perform as intended, ACCLARENT/INTEGRA has engaged in a negligent method of post market surveillance and risk management designed to avoid o r conceal the root cause of the unreasonably dangerous condition of its devices, rather than to correct the defects and prevent a foreseeable injury to a patient during an ENT surgical procedure.

27.    It is believed that PRECISION and/or PCB TECHNOLOGIES is/are the manufacturer, developer, and distributor of various navigated devices such as the balloons, probes, and suctions, as well as adapters and dongles used to connect the ACCLARENT/INTEGRA approved navigable devices to the ACCLARENT/INTEGRA TruDi Navigation System. PRECISION also used defective calibration dongles to calibrate many of the "plug and play" navigable devices. It is believed that one such defective device was utilized in the procedure performed on DONNA CAROL FERNIHOUGH.  It is believed that design of the various navigated devices such as the balloons, probes, and suctions, as well as adapters and dongles used to calibrate or connect the ACCLARENT/INTEGRA approved navigable devices to the ACCLARENT/INTEGRA TruDi Navigation System was unreasonably dangerous, or in the alternative PRECISION/PCB failed to conform to the design during the manufacturing process, including failing to accurately calibrate the navigable instruments or adapters/dongles or negligently conducted the calibration process. These acts and/or omissions likely caused or substantially contributed to the PRODUCT IN QUESTION failing to perform as intended leading to problems with location accuracy, registration, and calibration of the attached instruments which causes or substantially contributes to

Copy from re:SearchTX

the PRODUCT IN QUESTION experiencing misorientation, misguidance, and misdirection, particularly during the surgery on DONNA CAROL FERNIHOUGH.

28.    At the time ACCLARENT/INTEGRA, PRECISION, and PCB placed their products in question in the stream of commerce, such products were defective because of joint and several conditions that made the products unreasonably dangerous as designed, including the operational/performance design of the system utilizing "plug and play" navigational devices, their cables, adapters, and dongles. Considering the purported utility of the products relative to ENT surgical procedures such as sinuplasty procedures and to the population of sinuplasty patients upon whom the products were used when weighed against the gravity and likelihood of injury from their use, the products were unreasonably and dangerously defective.

29.    Further, PLAINTIFF believes that at the time the products left ACCLARENT'S/INTEGRA'S, PRECISION'S, and PCB'S control, one or more safer alternative designs existed that were economically and technologically feasible given the state of the art at that time.

30.    In the alternative, it is believed that the PRODUCTS IN QUESTION suffered from one or more manufacturing defects that rendered them non-conforming to ACCLARENT'S/INTEGRA'S design and performance metrics and specifications required for patient safety during the performance of ENT surgical procedures.

31.    In the alternative, it also is believed that ACCLARENT/INTEGRA, PRECISION, and PCB failed to warn of the extreme risk of harm posed by their products in question and that such risks included catastrophic injury and death.

Copy from re:SearchTX

32.    Further, in the alternative, it is believed that ACCLARENT/INTEGRA, PRECISION, and PCB were each negligent in placing their respective products in the stream of commerce when they did because of the product's defective, unreasonably dangerous condition and nature and because ACCLARENT/INTEGRA, PRECISION, and PCB did not exercise ordinary care in the development, testing, design, implementation, marketing, and post market surveillance relevant to the PRODUCTS IN QUESTION. PLAINTIFF believes and contends that the defective nature of the PRODUCTS was a substantial cause of her carotid artery being injured during the sinuplasty procedure in question.

33.    ACCLARENT'S consultant and agent, Dr. Marc Dean, evaluated DONNA CAROL FERNIHOUGH, did a CT scan of her sinuses, and recommended balloon sinuplasty. ACCLARENT, in the meantime, had been gathering CT scans and other information from Dr. Dean and other ENT surgeons to attempt to train the segmentation/AI component of the TruDi Navigation System.  Dr. Dean reportedly used the PRODUCTS IN QUESTION, the fully integrated ACCLARENT/INTEGRA BALLOON DILATION SYSTEM, including the TruDi Navigation System, balloon devices, including the RELIEVA SPINPLUS® NAV Balloon Sinuplasty System ("Relieva SpinPlus NAV System") with TruDi NAV Suction and suction cable, emitter pad, hub, TruDi Probe, Patient Tracker, adaptors/dongles, and cabling system during his surgery on DONNA CAROL FERNIHOUGH. He is believed to have registered and operated the devices in conformance with the instructions for use that he had received from the manufacturer.  It also is believed he used the TruSeg and/or TruPath functions of the PRODUCT IN QUESTION during the surgery on DONNA CAROL FERNIHOUGH.

Copy from re:SearchTX

34.    On May 19, 2023, DONNA CAROL FERNIHOUGH underwent a balloon sinuplasty procedure with navigation using the TruDi Navigation System and its navigated devices by Dr. Marc Dean. During the surgical procedure, the opening or ostia of DONNA CAROL FERNIHOUGH'S sphenoid sinus "was identified with the navigation guidewire". The balloon was inserted, deployed with 12 (twelve) atmospheres of pressure, and a massive amount of bleeding was encountered upon deflation of the balloon. Cat McCoy, an ACCLARENT/INTEGRA representative who was participating and assisting during the surgical procedure, stated that the carotid artery of DONNA CAROL FERNIHOUGH blew. Blood was spraying all over landing even on Cat McCoy, DONNA CAROL FERNIHOUGH, and likely others also present. Dr. Dean was confronted with blood obscuring the nasal and sinus cavity. He had to rely on the TruDi Navigation System and its navigated balloon when attempting to stop the massive, life-threatening bleeding encountered. Dr. Dean used the TruDi Navigation System and its navigable balloon to guide him to what he thought was the carotid artery to tamponade the bleeding. Once again, the TruDi Navigation System was not accurate. The PRODUCT IN QUESTION did not perform as intended even with an ENT surgeon using it who purportedly was one of the most experienced TruDi Navigation users in the world and a Key Opinion Leader (KOL) for ACCLARENT. DONNA CAROL FERNIHOUGH suffered a catastrophic carotid dissection and stroke that day that caused injuries that are present today.

35.    It is believed that the ACCLARENT/INTEGRA, PRECISION, and PCB TECHNOLOGIES products jointly or severally at the time of the procedure in question failed to perform as intended, including failing to provide the ENT surgeon continuous, reliable and submillimeter accuracy in guiding the surgeon during the performance of the

Copy from re:SearchTX

sinuplasty procedure on DONNA CAROL FERNIHOUGH. It is believed there was a design and performance malfunction. It is believed these products were defectively designed, manufactured, and/or negligently calibrated for use on the PRODUCT IN QUESTION. More particularly, it is believed that the ACCLARENT/INTEGRA, PRECISION, and PCB products jointly or severally posed an extreme risk of harm to sinuplasty patients such as DONNA CAROL FERNIHOUGH such that any putative benefits of the products were outweighed by the risk of catastrophic harm to the patient. It is believed these defects and malfunctions were a substantial cause of the incident in question and the injuries DONNA CAROL FERNIHOUGH suffered, for which she makes claim in this lawsuit.

36.    During the sinuplasty procedure on DONNNA CAROL FERNIGHOUH and while using ACCLARENT'S/INTEGRA'S, PRECISION'S, and/or PCB TECHNOLOGIES' PRODUCTS IN QUESTION, Dr. Dean, without notification or warning from the PRODUCTS IN QUESTION, was misled and misguided in DONNA CAROL FERNIHOUGH'S sphenoid sinus causing trauma to her carotid artery and stroke. This injury to DONNA CAROL FERNIHOUGH'S carotid artery likely occurred because the ACCLARENT/INTEGRA, PRECISION, and PCB PRODUCTS IN QUESTION, jointly and severally substantially contributed to misleading and misdirecting the ENT surgeon Dr. Dean regarding his location in the sphenoid sinus, which was a substantial cause of the injury to DONNA CAROL FERNIHOUGH'S carotid artery.

37.    It is believed Dr. Dean relied upon ACCLARENT'S/INTEGRA'S assurances that their products which he used in the balloon sinuplasty procedure on DONNA CAROL FERNIHOUGH, could be relied upon to provide consistent, reliable, submillimeter

Copy from re:SearchTX

accuracy, particularly during those aspects of the procedure when he could not visualize his path and structures without the aid of the products in question. It is further believed he relied on the accuracy and precision of the TruDi Navigation System and its integrated components to function as a medical navigation device to accurately and safely orient and direct him during DONNA CAROL FERNIHOUGH'S surgery to avoid contact with and trauma to her brain, blood vessels, optic structures, and other non-target anatomical structures. The TruDi Navigation System and its integrated components' medical navigation device did not work as designed, intended, or marketed. This was an entirely foreseeable and predictable issue with a defective product of which ACCLARENT/INTEGRA had actual knowledge and yet did not warn or alter its marketing to reflect the true issues with inaccuracy and other safety issues with the device.

38.     The DONNA CAROL FERNIHOUGH incident fits the pattern of many other incidents and complaints which constitute other similar incidents and complaints received by ACCLARENT/INTEGRA regarding the problems and defects of the PRODUCT IN QUESTION from 2019 to present. Disturbingly, there were other similar incidents before and after DONNA CAROL FERNIHOUGH'S procedure, including other patients experiencing carotid injuries. All these incidents have in common the use of the integrated system, the PRODUCT IN QUESTION, with adapters/dongles, hubs, cables, and component parts, such as Patient Tracker, probes, curettes, balloons with guidewires, and suction devices that all employ similarly designed and manufactured distal microsensors that are intended to be compatible with the PRODUCT IN QUESTION and its intended purpose of providing consistent, accurate, and reliable submillimeter navigation.

Copy from re:SearchTX

**39.**     Moreover, ACCLARENT/INTEGRA hid from its sales representatives who were marketing the device and actually involved in the use of the device during procedures that ACCLARENT/INTEGRA had notice of defects and injuries and further concealed from its customers that these events were occurring and being covered up by ACCLARENT/INTEGRA.

## CAUSES OF ACTION

## ACCLARENT, INC. / INTEGRA LIFESCIENCES CORPORATION
## STRICT PRODUCTS LIABILITY

**40.**     PLAINTIFF incorporates by reference her allegations set forth above in paragraphs 11 – 39.

**41.**     At all times relevant to this lawsuit, ACCLARENT/INTEGRA was engaged in the business of manufacturing, assembling, selling and distributing medical devices, such as the PRODUCT IN QUESTION, which includes the TruDi Navigation System, its updatable software and its navigable device attachments with common guidewires or common microsensors, including Curettes, probes, Relieva SpinPlus NAV System and its component parts, TruDi Nav Suction, cables, adapters/dongles, cables, emitter pad, and hubs, particularly for use in ENT procedures. Specifically, ACCLARENT/INTEGRA was involved, as part of its business plan in manufacturing, selling, or otherwise placing into the course of commerce products such as and similar to the PRODUCT IN QUESTION by transactions that are essentially commercial in character. ACCLARENT/INTEGRA particularly targeted Texas in this regard. ACCLARENT/INTEGRA was the manufacturer of the PRODUCT IN QUESTION as that term is defined in §82.001 Tex. Civ. Prac. & Rem. Code.     Alternatively,

Copy from re:SearchTX

ACCLARENT/INTEGRA sought and undertook the role of legal manufacturer regarding the PRODUCT IN QUESTION at all times relevant to the instant cause of action.

42.     ACCLARENT/INTEGRA knowingly distributed, sold, or, in the alternative, leased or consigned the PRODUCT IN QUESTION to Marc Dean, M.D. or Texas Health LLC for use by Marc Dean, M.D.

43.     At the time of DONNA CAROL FERNIHOUGH'S surgery, the PRODUCT IN QUESTION was in substantially the same condition as it (including all component parts) was at the time ACCLARENT/INTEGRA placed it (and its various component parts) into the stream of commerce, relinquishing control of it, and no material, unforeseeable alterations were made to any part of the product unless done by ACCLARENT/INTEGRA or with ACCLARENT'S/INTEGRA'S knowledge and approval.

44.     There was no reported unforeseeable misuse of the PRODUCT IN QUESTION that was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S damages in this case.  Dr. Dean is believed to have used the PRODUCT IN QUESTION regarding DONNA CAROL FERNIHOUGH in conformance with and reliance upon the way that ACCLARENT/INTEGRA had instructed him, through instruction by ACCLARENT/INTEGRA representatives and agents, and through information for use literature approved by ACCLARENT/INTEGRA, and that ACCLARENT/INTEGRA had ratified from previous information it had obtained regarding Dr. Dean's clinical practices.

45.     The PRODUCT IN QUESTION, an integrated navigation system, was designed, intended, and marketed to provide consistent, reliable, submillimeter accuracy

Copy from re:SearchTX

for orientation and navigation during ENT surgeries such as the sinuplasty procedure performed on DONNA CAROL FERNIHOUGH.

46.     The PRODUCT IN QUESTION, as used in the clinical field and particularly in the procedure in question, was defectively designed and did not provide consistent, accurate, and precise navigation during ENT procedures. It is believed that there were defects in the design of the PRODUCT IN QUESTION in terms of registration, calibration, connectivity, software interface, location inaccuracy, and that it did not consistently and reliably perform as intended. ACCLARENT/INTEGRA was aware of this unreasonably dangerous condition, propensity, and risk prior to DONNA CAROL FERNIHOUGH'S procedure. ACCLARENT/INTEGRA actively concealed these issues from its own sales team, from the FDA, and from the customers and end users of the product.

47.     It is believed that ACCLARENT/INTEGRA, since the incident in question, has undertaken to develop and employ alternative design features to the PRODUCT IN QUESTION, including its component parts, to address the known dangerous defects in the integrated product navigation system and thereby substantially reduce the incidence of imprecise navigation causing patient injury and safety issues. All such alternate designs and modifications were technologically and economically available and feasible to employ before ACCLARENT/INTEGRA manufactured and placed the PRODUCT IN QUESTION in the stream of commerce. Indeed, these prior and subsequent design features were alternative, safer designs that were available and both economically as well as technologically feasible to employ prior to the time the PRODUCT IN QUESTION was designed, manufactured, or placed in the stream of commerce.

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                                        **Page 21 of 58**

Copy from re:SearchTX

48.    It is believed that the design of the patient tracker system employed and integrated into the PRODUCT IN QUESTION was defective in that it failed to provide, or interfered with providing, consistent and accurate beginning-to-end registration and precise navigation.  This defect made the PRODUCT IN QUESTION unreasonably dangerous for ENT procedures, particularly in the sphenoid sinus. This defective design was a substantial producing cause of the incident in question, as well as DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

49.    Additionally, or in the alternative, it is believed that ACCLARENT/INTEGRA placed the PRODUCT IN QUESTION in the stream of commerce without adequate real-world testing of how the component parts, including Patient Trackers, microsensors, guidewires, adapters/dongles, cables, and emitter hubs, interacted with the TruDi Navigation System, including its navigable devices and the Relieva SpinPlus NAV System with regard to providing consistent, accurate, and reliable beginning to end registration, orientation, and precise navigation.

50.    Alternatively, it is believed that the navigation system was designed to utilize dedicated navigable devices that were comprised of clinically untested or inadequately tested components such as nav cables, guidewires, microsensors, and adapters/dongles that were jointly and severally unreasonably dangerous, particularly when integrated into the navigation system.  These defective conditions rendered the devices and the PRODUCT IN QUESTION unreasonably dangerous when the utility of the devices and the PRODUCT IN QUESTION in sinuplasty procedure, particularly in the sphenoid sinus, is weighed against the gravity and likelihood of harm being caused to a patient such as DONNA CAROL FERNIHOUGH in a sinuplasty procedure.

Copy from re:SearchTX

**51.** Additionally, or in the alternative, it is believed that ACCLARENT'S/INTEGRA'S introduction of artificial intelligence/segmentation made the PRODUCT IN QUESTION defective and unreasonably dangerous or, in the alternative, amplified the defective condition of the product to the point of making it unreasonably dangerous, particularly for use in ENT procedures. It is believed that design and performance deficiencies in how the artificial intelligence interfaced with the actual patient's anatomical features resulted in the PRODUCT IN QUESTION not providing consistent, reliable, submillimeter accuracy, particularly in the incident in question, and that these deficiencies adversely affected the consistency, reliability and accuracy of TruSeg and TruPath features upon which surgeons such as the one in question relied. This modification introduced a defective condition that made the PRODUCT more dangerous than it was without the modification and increased the risk to the point of being unreasonably dangerous, particularly to patients such as DONNA CAROL FERNIHOUGH on whom the device would be used to orient and direct the surgeon during a sinuplasty procedure, particularly in the area of the ostia of the sphenoid sinus. This defective condition was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

**52.** ACCLARENT/INTEGRA before and after marketing the PRODUCT IN QUESTION withheld or misrepresented information or material relevant to the federal government including the FDA which affected its determination of adequacy of the safety standards or regulations, if any, at issue in this action. §82.006(b)(2) Tex Civ. Prac. & Rem. Code.

Copy from re:SearchTX

**53.** In the alternative, PLAINTIFF believes there was a manufacturing defect in the PRODUCT IN QUESTION particularly regarding the navigable devices as well as adapters/dongles, nav cables, guidewires, and microsensors that was a substantial producing cause of Dr. Dean injuring DONNA CAROL FERNIHOUGH'S carotid artery and of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case. Additionally, or in the alternative, it is believed there was non-conformance to the design specifications regarding the calibration of the adapters/dongles and/or navigational devices

**54.** Also in the alternative, PLAINTIFF believes there was a defect in warnings at the time the PRODUCT IN QUESTION left the possession of ACCLARENT/INTEGRA that was a substantial producing cause of Dr. Dean injuring DONNA CAROL FERNIHOUGH'S carotid artery and of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case.

**55.** Still further in the alternative, PLAINTIFF believes there was a defect in instructions or warnings at the time of the PRODUCT IN QUESTION left the possession of ACCLARENT/INTEGRA that was a substantial producing cause of Dr. Dean injuring DONNA CAROL FERNIHOUGH'S carotid artery and of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case.

**56.** The aforementioned design, manufacturing, and marketing defects in the ACCLARENT/INTEGRA PRODUCTS IN QUESTION were jointly and severally each a substantial producing cause of Dr. Dean injuring DONNA CAROL FERNIHOUGH'S carotid artery and of the catastrophic injuries and damages for which DONNA CAROL FERNIHOUGH makes claim in this case.

Copy from re:SearchTX

**ACCLARENT/INTEGRA**
**NEGLIGENCE**

**57.**    PLAINTIFF incorporates by reference her allegations set forth above in paragraphs 11 – 39.

**58.**    ACCLARENT/INTEGRA breached the duty of reasonable care owed to DONNA CAROL FERNIHOUGH in the following specific regards:

**A.**    ACCLARENT/INTEGRA were negligent in investigating, researching, designing, manufacturing, assembling, integrating, and developing the PRODUCT IN QUESTION.

**B.**    In addition, or in the alternative, it is believed that ACCLARENT/INTEGRA were negligent in designing, manufacturing, assembling, testing, and integrating into the PRODUCT IN QUESTION the electromagnetic tracking system, which reportedly is necessary to properly provide accurate registration and navigation for the PRODUCT IN QUESTION.  Precise and stable registration is required to provide consistent, accurate, precise, and reliable navigation.  The defective design of the electromagnetic tracking system made or, in the alternative, amplified the defective design of the PRODUCT IN QUESTION, making it unreasonably dangerous.  This negligence was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

**C.**    In addition, or in the alternative, it is believed that ACCLARENT/INTEGRA were negligent in designing, manufacturing, testing, and integrating into the PRODUCT IN QUESTION the "plug and play" concept and in pre-calibrating the navigable devices used with the navigation system.  The defective design

Copy from re:SearchTX

"plug and play" attachments made or, in the alternative, amplified the defective design of the PRODUCT IN QUESTION, making it unreasonably dangerous. Such attachments had calibration problems and often could not plug and play with reliability and accuracy as required for patient safety.  This negligence was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

**D.**    In addition, or in the alternative, it is believed that ACCLARENT/INTEGRA were negligent in designing, manufacturing, testing, and integrating into THE PRODUCT IN QUESTION the guidewires with distal end microsensors incorporated into the plug and play attachments used with the navigation system.  The defective design and inconsistent calibration of the guidewires with distal end microsensors employed by the plug and play attachments made or, in the alternative, amplified the defective design of the PRODUCT IN QUESTION, making it unreasonably dangerous.  This negligence was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

**E.**    In addition, or in the alternative, it is believed that ACCLARENT/INTEGRA were negligent in designing, manufacturing, testing, and integrating into the PRODUCT IN QUESTION the adapters, dongles, hub, emitter pad, and Nav cables used to connect the ACCLARENT/INTEGRA manufactured and approved navigable devices into the navigation system.  The defective design of the adapters, dongles, and cables made or, in the alternative, amplified the defective design of the PRODUCT IN QUESTION, making it unreasonably dangerous.  This negligence

Copy from re:SearchTX

was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

**F.**    In addition, or in the alternative, it is believed that ACCLARENT/INTEGRA were negligent in designing, manufacturing, developing, testing and incorporating the connectivity design employed in the PRODUCT IN QUESTION. The connectivity design was deficient in that it failed to provide consistent, reliable connectivity which in turn prevented the device from providing consistent, reliable, submillimeter accuracy as designed and promoted. The defective design of the connectivity network made or, in the alternative, amplified the defective design of the PRODUCT IN QUESTION, making it unreasonably dangerous. This negligence was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

**G.**    It is believed that ACCLARENT/INTEGRA were negligent in introducing what they marketed as artificial intelligence into the software of the PRODUCT IN QUESTION in September 2021. It is believed that this modification was premature and not fully and properly tested or refined before introducing the product with this modification into the clinical marketplace. ACCLARENT/INTEGRA knew or should have known that the purported artificial intelligence caused or exacerbated the tendency of the integrated navigation system product to be inconsistent, inaccurate, and unreliable in providing accurate and reliable registration, navigation, and utilization of TruSeg and TruPath by ENT surgeons. This negligence was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

Copy from re:SearchTX

H.    It is believed that ACCLARENT/INTEGRA placed the PRODUCT IN QUESTION in the stream of commerce without adequate real world clinical testing and have, in effect, conducted post-market testing from 2019 through the present that should have been done before the PRODUCT IN QUESTION was placed in the stream of commerce.  It is believed that by failing to adequately test the PRODUCT IN QUESTION, particularly with real world clinical and failure mode testing that ACCLARENT/INTEGRA failed to act with ordinary care. Such negligence resulted in placing in the stream of commerce an unreasonably dangerous product and was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit.

I.    It is believed, in the alternative, that ACCLARENT/INTEGRA were negligent in placing the PRODUCT IN QUESTION into the stream of commerce when they did because they had not adequately, sufficiently, or with ordinary care, trained the PRODUCT'S artificial intelligence software. A very small number of CT scans were used to train the model.  This made the artificial intelligence component unreasonably dangerous and was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant suit. Moreover, ACCLARENT/INTEGRA knew and disregarded that artificial intelligence was a negligent choice to incorporate in their design, as their product designers and consultants had warned of this.

J.    Prior to the incident in question, ACCLARENT/INTEGRA negligently failed to heed, interpret, compile, investigate, or respond to the results of complaints and formal reports of suspected or actual location inaccuracy and imprecise navigation with

Copy from re:SearchTX

near misses and injuries to the carotid artery, optic nerve, brain, or other structures resulting from the use of the PRODUCT IN QUESTION in ENT procedures, particularly those in the sphenoid sinus. This includes failing to properly and timely respond to and fully investigate data compiled from surgeons, ACCLARENT/INTEGRA representatives, and other clinical complaints about the failure of the PRODUCT IN QUESTION to perform as intended. It is believed that ACCLARENT/INTEGRA engaged in the same negligent risk assessment and risk management described above regarding prior incidents and that such negligent conduct was a substantial proximate cause of the defective unreasonably dangerous condition of the PRODUCT IN QUESTION continuing to exist at the time of DONNA CAROL FERNIHOUGH'S procedure and which was a substantial proximate cause of her injuries claimed in this lawsuit.

**K.** ACCLARENT/INTEGRA negligently marketed the PRODUCT IN QUESTION by misrepresenting the safety, consistent reliability, and submillimeter accuracy of the PRODUCT IN QUESTION. Further, ACCLARENT/INTEGRA were negligent in rushing to market the PRODUCT IN QUESTION without proper testing and evaluation of post market testing particularly of the PRODUCT IN QUESTION'S integrated system tracking, registration, poor connectivity, improper calibration impacting the plug and play components, and the product failing to perform as intended.

**L.** ACCLARENT/INTEGRA negligently failed to provide adequate instructions and warnings, or in the alternative failed to exercise ordinary care in providing training, instruction, and warnings to clinical end users about the PRODUCT IN QUESTION.

Copy from re:SearchTX

**M.**      ACCLARENT/INTEGRA negligently failed to properly and timely maintain, update, and service the PRODUCT IN QUESTION utilized in the ENT procedure in question. It is believed that ACCLARENT/INTEGRA were negligent in maintaining and servicing the PRODUCT IN QUESTION to provide safe and accurate navigation during ENT procedures such as the procedure performed on DONNA CAROL FERNIHOUGH.

**N.**      ACCLARENT/INTEGRA negligently failed to timely recall, stop selling, marketing, and/or promoting the PRODUCT IN QUESTION particularly after they received repeated notice from the field that the PRODUCT IN QUESTION was not consistently providing the accurate registration, orientation, and precise submillimeter navigation that ACCLARENT/INTEGRA assured the clinical community that the device would consistently deliver, particularly in surgical procedures such as the one in question.

**O.**      ACCLARENT/INTEGRA negligently failed to interact with the FDA with candor and failed to provide candid information to the FDA and surgeons during and after the 510k process for Version 2 and Version 3 of the TruDi Navigation System about the major deficiencies of the PRODUCT IN QUESTION. This negligence on the part of ACCLARENT/INTEGRA rendered the PRODUCT IN QUESTION unreasonably dangerous.

**P.**      ACCLARENT/INTEGRA negligently marketed the PRODUCT IN QUESTION to healthcare providers and healthcare facilities like Dr. Dean and Texas Health LLC as an ENT navigation device that could provide superior and more precise navigation accuracy, even submillimeter accuracy, over past models of the product and competitor navigation devices. As a result of the defective condition of the PRODUCT IN

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                     **Page 30 of 58**

Copy from re:SearchTX

QUESTION, the PRODUCT could not be relied upon to provide consistent, accurate, and reliable submillimeter accuracy or even reasonable accuracy in procedures such as the one in question. This posed an extreme risk of harm when the PRODUCT IN QUESTION was relied upon for consistent, accurate, submillimeter accuracy in navigating during an ENT procedure. ACCLARENT'S/INTEGRA'S negligence in these regards was a substantial proximate cause of the incident in question and the injuries and damages for which DONNA CAROL FERNIHOUGH makes claim in the instant suit.

**Q.**      ACCLARENT/INTEGRA undertook the duty to monitor the use of the PRODUCT IN QUESTION in the marketplace or clinical practice after it was placed in the stream of commerce and prior to the incident in question. This undertaken duty included formulating a protocol for clinicians to report concerns, complaints, incidents, near misses, and adverse events, to ACCLARENT/INTEGRA so that ACCLARENT/INTEGRA could investigate such complaints and claims for product defects and dysfunction. It included the creation of a complaint database in which ACCLARENT/INTEGRA compiled complaints that were reportable events to the FDA as well as complaints that were determined to be "unreportable." This duty included a duty to investigate each complaint with ordinary care, attempt to identify a root cause, conduct trend analysis, and attempt to timely eliminate the defect or mitigate the risk from the defect. ACCLARENT/INTEGRA failed to perform this duty undertaken with ordinary care, which is demonstrated by how it responded to the FERNIHOUGH incident and many others.

**R.**      ACCLARENT/INTEGRA undertook the duty to perform post-market surveillance on the PRODUCT IN QUESTION which included reporting adverse events to the FDA and compiling, trending, investigating, and responding to complaints from the

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                    **Page 31 of 58**

field regarding any issue with the use and function of the PRODUCT IN QUESTION, including incidents resulting in injury as well as near-miss incidents. The breach of this duty comprises negligent risk management and is in violation of the Quality System that ACCLARENT/INTEGRA were required to follow to ensure a safe product. It is believed that ACCLARENT/INTEGRA failed to perform this duty with ordinary care which was a proximate cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages for which she makes claim in the instant lawsuit.

S.      ACCLARENT/INTEGRA negligently failed to timely and adequately address and correct defects and potential risks identified during post market surveillance during the total life cycle of the PRODUCT IN QUESTION which includes failing to take timely corrective and preventive action so that clinical end users of the PRODUCT IN QUESTION in the field did not injure anyone.

T.      ACCLARENT/INTEGRA undertook the duty and retained the right to monitor and exclusively maintain the function, performance, and operation of the PRODUCT IN QUESTION directly or through its authorized consultants/representatives who were typically present in the operating room during surgical procedures.  It is believed that ACCLARENT/INTEGRA failed to perform this duty with ordinary care which was a proximate cause of the incident in question.  In the alternative, ACCLARENT/INTEGRA was negligent in training and informing its sales force regarding the deficiencies and defects that ACCLARENT/INTEGRA identified with the PRODUCT IN QUESTION.

U.      ACCLARENT/INTEGRA were negligent in failing to use ordinary care in the formulation, implementation, or enforcement of proper risk management programs or protocols and post market surveillance programs including the failure to

Copy from re:SearchTX

conduct trend and root cause analysis regarding complaints, particularly involving severe injuries sustained during the use of the PRODUCT IN QUESTION or to adequately test throughout the total life cycles of the PRODUCT IN QUESTION for the efficacy, safety, and accuracy in the clinical setting and when certain lot numbers did not perform as intended.

**V.** ACCLARENT/INTEGRA were aware at the time of DONNA CAROL FERNIHOUGH'S surgery that the PRODUCT IN QUESTION could cause a surgeon operating in the sphenoid sinus to become disoriented or misdirected which foreseeably could have devastating consequences, including damage to the carotid artery such as DONNA CAROL FERNIHOUGH has experienced or even death, yet ACCLARENT/INTEGRA failed to exercise ordinary care to eliminate or significantly mitigate the unreasonably dangerous condition before and after the surgery performed on DONNA CAROL FERNIHOUGH.

59. ACCLARENT'S/INTEGRA'S negligent acts and/or omissions, as alleged above, were committed by or under the supervision of one or more of its vice-principals.

60. Alternatively, ACCLARENT'S/INTEGRA'S negligent acts and/or omissions, as alleged above, were approved or ratified by one or more of its vice-principals.

61. Each of ACCLARENT'S/INTEGRA'S negligent acts and/or omissions when viewed, separately and/or jointly, objectively from the standpoint of the actor, ACCLARENT/INTEGRA, at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to individuals interfacing with this medical device near major blood vessels, the eyes, and the brain.

Copy from re:SearchTX

**62.** ACCLARENT/INTEGRA, by and through their vice-principals including JEFF HOPKINS, had actual, subjective awareness of the risk involved with the PRODUCT IN QUESTION, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of patients such as DONNA CAROL FERNIHOUGH undergoing ENT procedures utilizing and relying upon the PRODUCT IN QUESTION to provide true and accurate orientation and direction, particularly in the sphenoid sinus.

**63.** ACCLARENT'S/INTEGRA'S acts or omissions or conduct described above were jointly and severally a direct, proximate, and substantial cause of DONNA CAROL FERNIHOUGH'S suffering severe, catastrophic life-changing injuries resulting in the losses and harms for which she has made a claim in this case.

**PRECISION CONCEPTS, LLC**
**STRICT PRODUCTS LIABILITY**

**64.** PLAINTIFF incorporates by reference her allegations set forth above in paragraphs 11 – 39.

**65.** At all times relevant to this lawsuit, PRECISION was engaged in the business of manufacturing, licensing, distributing, selling, and supplying navigable devices, navigational guidewires, microsensors, adapters, and dongles incorporated into and used with the PRODUCT IN QUESTION, hereafter also referred to as the COMPONENT PRODUCTS. Specifically, PRECISION was involved, as part of its business plan, in creating, selling, licensing, supplying, or otherwise placing into the course of commerce devices used with and as components parts for the PRODUCTS IN QUESTION. PRECISION particularly targeted or coordinated with ACCLARENT/INTEGRA in targeting Texas in this regard.

Copy from re:SearchTX

66.    PRECISION is believed to have designed, developed, assembled, manufactured, tested, inspected, distributed, marketed, licensed, sold to and supplied to ACCLARENT/INTEGRA the COMPONENT PRODUCTS used with or in the PRODUCTS IN QUESTION, including the balloon devices and/or balloon device componentry, curettes, probes, suction devices, the nav wires or guidewires, microsensors, cables, adapters, and dongles, including calibration dongles (hereafter also referred to as COMPONENT PRODUCTS).   These component parts were incorporated into the PRODUCT IN QUESTION that was utilized in the procedure in question on DONNA CAROL FERNIHOUGH.

67.    PRECISION knowingly sold, distributed, licensed, and/or supplied to ACCLARENT/INTEGRA the COMPONENT PRODUCTS for use in or with the PRODUCT IN QUESTION with the knowledge and consent that the PRODUCT IN QUESTION would be sold and used across the United States and particularly in the State of Texas.

68.    At the time of DONNA CAROL FERNIHOUGH'S surgery, the COMPONENT PRODUCT IN QUESTION was in substantially the same condition as it was at the time PRECISION released the PRODUCTS into the stream of commerce or as incorporated into the PRODUCT IN QUESTION, ACCLARENT/INTEGRA placed it (and its various component parts) into the stream of commerce, and no material, unforeseeable alterations were made to any part of the product unless done by ACCLARENT/INTEGRA or with ACCLARENT'S/INTEGRA'S knowledge and approval.

69.    There was no unforeseeable misuse of the COMPONENT PRODUCTS IN QUESTION that was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages in this case.

Copy from re:SearchTX

70.    There was a design defect in the COMPONENT PRODUCTS IN QUESTION at the time the products left PRECISION'S and ACCLARENT'S/INTEGRA'S possession that was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages in this case.

71.    More specifically, the PRECISION COMPONENT PRODUCTS IN QUESTION were unreasonably dangerous as designed, taking into consideration the utility of the COMPONENT PRODUCTS, jointly and severally as integrated into the PRODUCT IN QUESTION, and the risk involved in their use. The COMPONENT PARTS, jointly and severally, when integrated into the PRODUCT IN QUESTION, failed to deliver consistent connectivity and reliable data transmission, orientation, location accuracy, calibration, and direction that ACCLARENT/INTEGRA promoted and encouraged ENT surgeons to rely upon.  In the alternative, the COMPONENT PARTS, jointly and when integrated into the PRODUCT IN QUESTION, impeded THE PRODUCT IN QUESTION from performing as marketed and intended, particularly by impeding the PRODUCT IN QUESTION from delivering consistent connectivity and reliable data transmission, orientation, location accuracy, with submillimeter precision, and direction due in part to faulty manufacture with improperly calibrated dongles.

72.    At the time the COMPONENT PRODUCTS in question left PRECISION'S and ACCLARENT'S/INTEGRA'S possession, there was one or more safer alternative designs other than the design formulated, manufactured and licensed by PRECISION and used by ACCLARENT/INTEGRA in the PRODUCT IN QUESTION,  which would have prevented or significantly reduced the risk of the incident in question. These alternative designs included proper calibration of the navigable instruments before sale

Copy from re:SearchTX

or use, elimination of manufacturer calibration of adapters, dongles, and navigable devices used with the PRODUCT IN QUESTION, or in the alternative the elimination of the "plug and play" concept/design, and alterations in the design of the COMPONENT PRODUCTS IN QUESTION to substantially reduce the incidence of connectivity failure, calibration failure, degradation or inconsistency occurring during a ENT procedure.

73.     The alternative design(s) available at the time the PRECISION COMPONENT PRODUCTS IN QUESTION left PRECISION'S and ACCLARENT'S/INTEGRA'S possession were economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge at the time the COMPONENT PRODUCTS in question left PRECISION'S and ACCLARENT'S/INTEGRA'S possession or control.

74.     Since the manufacture of the PRECISION COMPONENT PRODUCTS IN QUESTION, it is believed that PRECISION and ACCLARENT/INTEGRA have employed alternative design features and corrective actions pertaining to the COMPONENT PRODUCTS to reduce the incidence of location inaccuracy, imprecise navigation, and misdirection in sinuplasty procedures.  Such alternative designs include alterations to calibration and design of the component parts/calibration dongles to increase consistency and reliability of connectivity, calibration, location accuracy during navigation, and for the product to perform safely as intended. All such designs were technologically and economically available and feasible to employ before manufacturing and selling the PRODUCT IN QUESTION.  These prior and subsequent design features were alternative, safer designs that were available and both economically as well as technologically

Copy from re:SearchTX

feasible to employ prior to the time the PRODUCT IN QUESTION was designed, manufactured, or placed in the stream of commerce.

75.    In the alternative, PLAINTIFF believes there was one or more manufacturing defects in the COMPONENT PRODUCTS IN QUESTION that was a substantial producing cause of DONNA CAROL FERNIHOUGH'S catastrophic injuries for which she makes claim in this case.

76.    In the alternative, in the production and manufacturing of the COMPONENT PRODUCTS IN QUESTION, PRECISION failed to conform to the calibration design specifications, which resulted in the COMPONENT PRODUCTS being unreliable and thus creating an unreasonably dangerous condition for patients undergoing procedures utilizing the COMPONENT PARTS IN QUESTION.

77.    Also in the alternative, PLAINTIFF believes there was a defect in warnings at the time the PRECISION COMPONENT PRODUCTS IN QUESTION left the possession of ACCLARENT/INTEGRA that was a substantial producing cause of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case.

78.    Still further in the alternative, PLAINTIFF believes there was a defect in instruction or warnings at the time the PRECISION PRODUCTS IN QUESTION IN QUESTION left the possession of ACCLARENT/INTEGRA that was a substantial producing cause of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case.

79.    The aforementioned design, manufacturing, and marketing defects in the PRECISION COMPONENT PRODUCTS IN QUESTION were jointly and severally each

Copy from re:SearchTX

a substantial producing cause of the catastrophic injuries, for which DONNA CAROL FERNIHOUGH makes claim in this case.

80.    PRECISION, prior to the incident in question, was aware from prior investigation, reports, and complaints that the design and calibration of the COMPONENT PRODUCTS in question were inherently and unreasonably dangerous as used in the ACCLARENT/INTEGRA PRODUCT IN QUESTION, particularly when used as a navigational guidance system for ENT surgeries such as the one performed on DONNA CAROL FERNIHOUGH.

81.    PRECISION was aware at the time of DONNA CAROL FERNIHOUGH'S surgery that THE COMPONENT PRODUCTS, particularly when used as part of the PRODUCT IN QUESTION, as a navigational guidance system for ENT surgeries such as the one performed on DONNA CAROL FERNIHOUGH, could cause the PRODUCT IN QUESTION to fail in its intended function of providing continuous, reliable, submillimeter location accuracy and proper connectivity from beginning to end of an ENT procedure such as the one performed on DONNA CAROL FERNIGHOUGH, which could result in the surgeon operating in the sphenoid sinus to become disoriented or misdirected which foreseeably could have devastating consequences, including resulting in the type of injury that DONNA CAROL FERNIHOUGH has experienced or even death.

82.    PRECISION, as authorized or ratified by its vice-principals, disregarded the known risks posed by the defective condition of the COMPONENT PRODUCTS IN QUESTION, which was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and harms for which she makes claim in this case.

Copy from re:SearchTX

83.    The aforementioned gross negligent acts, omissions and conduct as described above regarding the design, manufacturing, and marketing defects in the PRECISION COMPONENT PRODUCTS IN QUESTION were jointly and severally each a substantial producing cause of the catastrophic injuries and damages for which DONNA CAROL FERNIHOUGH makes claim in this case.

**PRECISION CONCEPTS, LLC**
**NEGLIGENCE**

84.    PLAINTIFF incorporates by reference her allegations set forth above in paragraphs 11 – 39.

85.    PRECISION is negligent in designing, manufacturing, assembling, and distributing the COMPONENT PRODUCTS IN QUESTION, particularly the navigable devices, navigational guidewires, microsensors, cables adapters, and dongles incorporated into, used relevant to and/or utilized with the PRODUCT IN QUESTION during the procedure on DONNA CAROL FERNIHOUGH. PRECISION in the exercise of ordinary care, should have known at the time the COMPONENT PRODUCTS IN QUESTIION were introduced into the stream of commerce that they were defective and unreasonably dangerous and that they could make the ACCLARENT/INTEGRA PRODUCT IN QUESTION defective and unreasonably dangerous to patients such as DONNA CAROL FERNIHOUGH on whom the PRODUCT IN QUESTION AND COMPONENT PRODUCTS would be used to direct the surgeon during a sinuplasty procedure, particularly in the area of the sphenoid sinus.

Copy from re:SearchTX

86.   PRECISION negligently marketed THE COMPONENT PRODUCTS in question, to medical device manufacturers like ACCLARENT/INTEGRA as providing superior and precise calibration to enable navigation accuracy, especially regarding the navigable devices attachable to the PRODUCT IN QUESTION and the components used relevant to or incorporated into the PRODUCT IN QUESTION that was utilized in the procedure on DONNA CAROL FERNIHOUGH, including the navigational guidewires, microsensors, cables, adapters and dongles.   PRECISION was negligent in selling, licensing, or marketing the COMPONENT PRODUCTS IN QUESTION as fully calibrated, safe, and accurate for use in ENT surgery.

87.   PRECISION negligently marketed THE COMPONENT PRODUCTS IN QUESTION, to medical device manufacturers like ACCLARENT/INTEGRA as providing superior and precise navigation accuracy, especially regarding its nav guidewires and navigable devices incorporated into the PRODUCT IN QUESTION that was utilized in the procedure on DONNA CAROL FERNIHOUGH.   PRECISION was negligent in selling, licensing, or marketing the COMPONENT PRODUCTS IN QUESTION as fully calibrated, safe, and accurate for use in ENT surgery.

88.   PRECISION placed the COMPONENT PRODUCTS IN QUESTION in the stream of commerce with the knowledge that they would, through the use of the ACCLARENT/INTEGRA PRODUCT IN QUESTION, be used by surgeons such as and Marc Dean, M.D. on patients undergoing sinuplasty procedures. It was foreseeable that the COMPONENT PRODUCTS IN QUESTION and the ACCLARENT/INTEGRA PRODUCT IN QUESTION incorporating such COMPONENT PRODUCTS could be used by a surgeon such as Marc Dean, M.D. on an individual such as DONNA CAROL

Copy from re:SearchTX

FERNIHOUGH. PRECISION owed DONNA CAROL FERNIHOUGH the duty of reasonable care when PRECISION designed, manufactured, marketed, licensed, and/or sold the COMPONENT PRODUCTS IN QUESTION to ACCLARENT/INTEGRA, which it violated.

89.    PRECISION breached the duty of reasonable care owed to DONNA CAROL FERNIHOUGH in the following specific regards:

A.    Negligently designing, developing, manufacturing, and marketing the COMPONENT PRODUCTS IN QUESTION.

B.    Negligently testing the COMPONENT PRODUCTS IN QUESTION or negligently failing to consider the inadequacy of the calibration, testing, the test parameters, and the test results, to which it had access and negligently interpreting such data before and after placing the COMPONENT PRODUCTS IN QUESTION into the stream of commerce.

C.    Undertaking but negligently engaging in post market surveillance regarding the COMPONENT PRODUCTS IN QUESTION by failing to analyze or respond to complaints and formal reports of their products not performing as intended due to improper calibration with faulty dongles, such as the COMPONENT PRODUCTS utilized in the procedure on DONNA CAROL FERNIHOUGH.

D.    Negligently marketing the COMPONENT PRODUCTS IN QUESTION by overstating the safety, precision, and reliability of the products, as well as failing to provide adequate warnings and instructions to avoid the type of incident that occurred in this instance.

Copy from re:SearchTX

**E.** Negligently calibrating the COMPONENT PRODUCTS IN QUESTION that were utilized in the procedure performed on DONNA CAROL FERNIHOUGH, as well as negligently distributing such products for use in the PRODUCT IN QUESTION utilized in the procedure on DONNA CAROL FERNIHOUGH.

**F.** Failing to perform corrective and preventive action regarding the COMPONENT PRODUCTS IN QUESTION, in a timely manner, particularly after PRECISION received notice from the field or from ACCLARENT/INTEGRA that the ACCLARENT/INTEGRA PRODUCT IN QUESTION which incorporated the PRECISION COMPONENT PRODUCTS, was not performing as intended and had caused serious injuries to patients, including carotid injuries such as sustained by DONNA CAROL FERNIHOUGH.

**G.** Negligently failing to stop selling, supplying, distributing to ACCLARENT/INTEGRA and promoting the COMPONENT PRODUCTS IN QUESTION, particularly after PRECISION received notice from the field or from ACCLARENT/INTEGRA that the ACCLARENT/INTEGRA PRODUCT IN QUESTION, incorporating the PRECISION COMPONENT PRODUCTS, was not performing as required for patient safety.

90. PRECISION'S above-described negligence was in reasonable probability a proximate cause of DONNA CAROL FERNIHOUGH'S severe, catastrophic life-changing injuries that have resulted in the losses and harms for which she has made a claim in this case.

91. PRECISION'S negligent acts and/or omissions, as alleged above, were committed by or under the supervision of one or more of its vice-principals.

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                    **Page 43 of 58**

Copy from re:SearchTX

92.     Alternatively, PRECISION'S negligent acts and/or omissions, as alleged above, were approved or ratified by one or more of its vice-principals.

93.     Each of PRECISION'S negligent acts and/or omissions when viewed, separately and/or jointly, objectively from  PRECISION'S standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to individuals interfacing with this medical device near major blood vessels, nerves, the eyes, and the brain.

94.     PRECISION, by and through its vice-principals, had actual, subjective awareness of the risk involved with the PRODUCT IN QUESTION, particularly when incorporating the COMPONENT PRODUCTS IN QUESTION, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of patients such as DONNA CAROL FERNIHOUGH undergoing sinuplasty procedures utilizing and relying upon the PRODUCT IN QUESTION, employing PRECISION COMPONENT PRODUCTS IN QUESTION to provide their ENT surgeon consistent, reliable and accurate orientation and direction, from beginning to end of the procedure, particularly in the sphenoid sinus.

95.     PRECISION, by and through its vice-principals, had actual, subjective awareness of the risk involved the ACCLARENT/INTEGRA PRODUCT IN QUESTION, particularly when employing the PRECISION COMPONENT PRODUCTS IN QUESTION, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of patients such as DONNA CAROL FERNIHOUGH undergoing sinuplasty procedures utilizing and relying upon the ACCLARENT/INTEGRA PRODUCT IN QUESTION to provide consistent and accurate navigation for ENT surgeons, particularly in the sphenoid sinus.

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                                 **Page 44 of 58**

Copy from re:SearchTX

**96.** PRECISION'S acts or omissions or conduct described above were jointly and severally a direct, proximate and substantial cause of DONNA CAROL FERNIHOUGH suffering severe, catastrophic life-changing injuries resulting in the losses and harms for which she has made a claim in this case.

### PCB TECHNOLOGIES USA INC.
### STRICT PRODUCTS LIABILITY

**97.** PLAINTIFF incorporates by reference her allegations set forth above in paragraphs 11 – 39.

**98.** At all times relevant to this lawsuit, PCB was engaged in the business of manufacturing, licensing, distributing, selling, and supplying the Multi Instrument Adapters/Dongles incorporated into and used with the PRODUCT IN QUESTION. Specifically, PCB was involved, as part of its business plan, in creating, selling, licensing, supplying, or otherwise placing into the course of commerce dongles for the PRODUCTS IN QUESTION. PCB particularly targeted or coordinated with ACCLARENT/INTEGRA in targeting Texas in this regard.

**99.** PCB is believed to have designed, developed, assembled, manufactured, tested, inspected, distributed, marketed, licensed, sold to and supplied to ACCLARENT/INTEGRA the Multi Instrument Adapters/Dongles used with or in the PRODUCTS IN QUESTION, including the balloon devices and/or balloon device componentry, curettes, probes, suction devices, nav wires or guidewires, microsensors, cables, adapters, and dongles. These Multi Instrument Adapters/Dongles were incorporated into the PRODUCT IN QUESTION that was utilized in the procedure in

Copy from re:SearchTX

question on DONNA CAROL FERNIHOUGH, as well as being used for calibration of navigational devices used with the PRODUCT IN QUESTION.

100. PCB knowingly sold, distributed, licensed, and/or supplied to ACCLARENT/INTEGRA the Multi Instrument Adapters/Dongles for use in or with THE PRODUCT IN QUESTION with the knowledge and consent that THE PRODUCT IN QUESTION would be sold and used across the United States and particularly in the State of Texas.

101. At the time of DONNA CAROL FERNIHOUGH'S surgery, the Multi Instrument Adapters/Dongles were in substantially the same condition as they were at the time PCB released the Multi Instrument Adapters/Dongles into the stream of commerce or as incorporated into the PRODUCT IN QUESTION. ACCLARENT/INTEGRA placed it (and its various component parts) into the stream of commerce, and no material, unforeseeable alterations were made to any part of the product unless done by ACCLARENT/INTEGRA or with ACCLARENT'S/INTEGRA'S knowledge and approval.

102. There was no unforeseeable misuse of the Multi Instrument Adapters/Dongles that was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages in this case.

103. There was a design defect in the Multi Instrument Adapters/ Dongles at the time the products left PCB'S and ACCLARENT'S/INTEGRA'S possession that was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and damages in this case.

Copy from re:SearchTX

**104.** More specifically, the PCB Multi Instrument Adapters/Dongles were unreasonably dangerous as designed, taking into consideration the utility of the Multi Instrument Adapters/Dongles, jointly and severally as integrated into the PRODUCT IN QUESTION, and the risk involved in their use. The Multi Instrument Adapters/Dongles, jointly and severally when used relevant to and/or integrated into the PRODUCT IN QUESTION, failed to deliver consistent connectivity and reliable data transmission, orientation, location accuracy, calibration, and direction that ACCLARENT/INTEGRA promoted and encouraged ENT surgeons to rely upon. In the alternative, the Multi Instrument Adapters/Dongles, jointly and when integrated into the PRODUCT IN QUESTION, impeded THE PRODUCT IN QUESTION from performing as marketed and intended, particularly by impeding the PRODUCT IN QUESTION from delivering consistent connectivity and reliable data transmission, orientation, location accuracy, with submillimeter precision, and direction due in part to faulty manufacture with improperly functioning dongles.

**105.** At the time the Multi Instrument Adapters/Dongles in question left PCB'S and ACCLARENT'S/INTEGRA'S possession, there was one or more safer alternative designs other than the design formulated, manufactured and licensed by PCB and used by ACCLARENT/INTEGRA in the PRODUCT IN QUESTION, which would have prevented or significantly reduced the risk of the incident in question. These alternative designs included proper calibration/connectivity of the Multi Instrument Adapters/Dongles before sale or use, elimination of manufacturer Multi Instrument Adapters/Dongles used with the PRODUCT IN QUESTION, or in the alternative the elimination of the "plug and play" concept/design.

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                                 **Page 47 of 58**

Copy from re:SearchTX

**106.** The alternative design(s) available at the time the PCB Multi Instrument Adapters/Dongles left PCB'S and ACCLARENT'S/INTEGRA'S possession were economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge at the time the Multi Instrument Adapters/Dongles in question left PCB'S and ACCLARENT'S/INTEGRA'S possession or control.

**107.** Since the manufacture of the PCB Multi Instrument Adapters/Dongles, it is believed that PCB and ACCLARENT/INTEGRA have employed alternative design features and corrective actions pertaining to the Multi Instrument Adapters/Dongles to reduce the incidence of location inaccuracy, imprecise navigation, and misdirection in ENT procedures. Such alternative designs include alterations to calibration and design of the Multi Instrument Adapters/Dongles to increase consistency and reliability of connectivity, calibration, location accuracy during navigation, and for the product to perform safely as intended. All such designs were technologically and economically available and feasible to employ before manufacturing and selling the PRODUCT IN QUESTION. These prior and subsequent design features were alternative, safer designs that were available and both economically as well as technologically feasible to employ prior to the time the PRODUCT IN QUESTION was designed, manufactured, or placed in the stream of commerce.

**108.** In the alternative, PLAINTIFF believes there were one or more manufacturing defects in the Multi Instrument Adapters/Dongles that was a substantial producing cause of DONNA CAROL FERNIHOUGH'S catastrophic injuries for which she makes claim in this case.

Copy from re:SearchTX

**109.** In the alternative, in the production and manufacturing of the Multi Instrument Adapters/Dongles, PCB failed to conform to the calibration design specifications, which resulted in the Multi Instrument Adapters/Dongles being unreliable and thus creating an unreasonably dangerous condition for patients undergoing procedures utilizing the Multi Instrument Adapters/Dongles.

**110.** Also in the alternative, PLAINTIFF believes there was a defect in warnings at the time of the PCB Multi Instrument Adapters/Dongles left the possession of ACCLARENT/INTEGRA that was a substantial producing cause of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case.

**111.** Still further in the alternative, PLAINTIFF believes there was a defect in manufacture at the time of the PCB Multi Instrument Adapters/Dongles left the possession of ACCLARENT/INTEGRA that was a substantial producing cause of the catastrophic injuries for which DONNA CAROL FERNIHOUGH makes claim in this case.

**112.** The aforementioned design, manufacturing, and marketing defects in the PCB Multi Instrument Adapters/ Dongles were jointly and severally each a substantial producing cause of the catastrophic injuries, for which DONNA CAROL FERNIHOUGH makes claim in this case.

**113.** PCB, prior to the incident in question, was aware from prior investigation, reports, and complaints that the design and calibration of the Multi Instrument Adapters/Dongles in question were inherently and unreasonably dangerous as used in the ACCLARENT/INTEGRA PRODUCT IN QUESTION, particularly when used as a navigational guidance system for ENT surgeries such as the one performed on DONNA CAROL FERNIHOUGH.

Copy from re:SearchTX

114.    PCB was aware at the time of DONNA CAROL FERNIHOUGH'S surgery that the Multi Instrument Adapters/Dongles, when used as part of the PRODUCT IN QUESTION, as a navigational guidance system for ENT surgeries such as the one performed on DONNA CAROL FERNIHOUGH, could cause the PRODUCT IN QUESTION to fail in its intended function of providing continuous, reliable, submillimeter location accuracy and proper connectivity from beginning to end of a ENT procedure such as the one performed on DONNA CAROL FERNIGHOUGH, which could result in the surgeon operating in the sphenoid sinus to become disoriented or misdirected which foreseeably could have devastating consequences, including resulting in the type of injury that DONNA CAROL FERNIHOUGH has experienced or even death.

115.    PCB, as authorized, or ratified by its vice-principals disregarded the known risks posed by the defective condition of the Multi Instrument Adapters/Dongles which was a substantial producing cause of the incident in question and DONNA CAROL FERNIHOUGH'S injuries and harms for which she makes claim in this case.

116.    The aforementioned gross negligent acts, omissions and conduct regarding the design, manufacturing, and marketing defects in the PCB Multi Instrument Adapters/Dongles were jointly and severally each a substantial producing cause of the catastrophic injuries and damages for which DONNA CAROL FERNIHOUGH makes claim in this case.

Copy from re:SearchTX

**PCB TECHNOLOGIES USA INC.**
**NEGLIGENCE**

117.    PLAINTIFF incorporates by reference her allegations set forth above in paragraphs 11 – 39.

118.    PCB is negligent in designing, manufacturing, assembling, and distributing the Multi Instrument Adapters/Dongles incorporated into and used with the PRODUCT IN QUESTION, which was utilized during the procedure on DONNA CAROL FERNIHOUGH. PCB in the exercise of ordinary care, should have known at the time the Multi Instrument Adapters/ Dongles were introduced into the stream of commerce that they were defective and unreasonably dangerous and that they could make the ACCLARENT/INTEGRA PRODUCT IN QUESTION defective and unreasonably dangerous to patients such as DONNA CAROL FERNIHOUGH on whom the PRODUCT IN QUESTION and the Multi Instrument Adapters/Dongles would be used to direct the surgeon during a sinuplasty procedure, particularly in the area of the sphenoid sinus.

119.    PCB negligently marketed the Multi Instrument Adapters/Dongles in question to medical device manufacturers like ACCLARENT/INTEGRA as providing superior and precise function to enable proper connectivity to support navigation accuracy, especially regarding the navigable devices attachable to the PRODUCT IN QUESTION and the components incorporated into the PRODUCT IN QUESTION that was utilized in the procedure on DONNA CAROL FERNIHOUGH.  PCB was negligent in selling, licensing, or marketing the Multi Instrument Adapters/Dongles as fully functional, calibrated, safe, and accurate for use in ENT surgery.

Copy from re:SearchTX

120.    PCB negligently marketed the Multi Instrument Adapters/Dongles to medical device manufacturers like ACCLARENT/INTEGRA as providing superior and precise connectivity and navigation accuracy when used with the PRODUCT IN QUESTION that was utilized in the procedure on  DONNA CAROL FERNIHOUGH.  PCB was negligent in selling, licensing, or marketing the Multi Instrument Adapters/Dongles as fully functional with proper connectivity, calibrate, safe, and accurate for use in ENT surgery.

121.    PCB placed the Multi Instrument Adapters/Dongles in the stream of commerce with the knowledge that they would, through the use of the ACCLARENT/INTEGRA PRODUCT IN QUESTION, be used by surgeons such as and like Marc Dean, M.D. on patients undergoing sinuplasty procedures. It was foreseeable that the Multi Instrument Adapters/Dongles and the ACCLARENT/INTEGRA PRODUCT IN QUESTION incorporating such Multi Instrument Adapters/Dongles could be used by a surgeon such as Marc Dean, M.D. on an individual such as DONNA CAROL FERNIHOUGH. PCB owed DONNA CAROL FERNIHOUGH the duty of reasonable care when PCB designed, manufactured, marketed, licensed, and/or sold the Multi Instrument Adapters/ Dongles to ACCLARENT/INTEGRA, which it violated.

122.    PCB breached the duty of reasonable care owed to DONNA CAROL FERNIHOUGH in the following specific regards:

    A.    Negligently designing, developing, manufacturing and marketing the Multi Instrument Adapters/Dongles.

    B.    Negligently testing the Multi Instrument Adapters/Dongles or negligently failing to consider the inadequacy of the connectivity, calibration, testing, the

Copy from re:SearchTX

test parameters, and the test results, to which it had access and negligently interpreting such data before and after placing the Multi Instrument Adapters/Dongles into the stream of commerce.

C.      Undertaking but negligently engaging in post market surveillance regarding the Multi Instrument Adapters/Dongles by failing to analyze or respond to complaints and formal reports of their products not performing as intended.

D.      Negligently marketing the Multi Instrument Adapters/Dongles by overstating the safety, precision, and reliability of the products, as well as failing to provide adequate warnings and instructions to avoid the type of incident that occurred in this instance.

E.      Negligently calibrating/manufacturing the Multi Instrument Adapters/ Dongles that were utilized in the procedure performed on DONNA CAROL FERNIHOUGH, as well as negligently distributing such products for use in the PRODUCT IN QUESTION utilized in the procedure on DONNA CAROL FERNIHOUGH.

F.      Failing to perform corrective and preventive action regarding the Multi Instrument Adapters/Dongles in a timely manner, particularly after PCB  received notice from the field or from ACCLARENT/INTEGRA that the ACCLARENT/INTEGRA PRODUCT IN QUESTION which incorporated the PCB Multi Instrument Adapters/Dongles was not performing as intended and had caused serious injuries to patients, including carotid injuries such as sustained by DONNA CAROL FERNIHOUGH.

G.      Negligently failing to stop selling, supplying, distributing to ACCLARENT/INTEGRA and promoting the Multi Instrument Adapters/ Dongles, particularly after PCB received notice from the field or from ACCLARENT/INTEGRA that

Copy from re:SearchTX

the ACCLARENT/INTEGRA PRODUCT IN QUESTION, incorporating the PCB Multi Instrument Adapters/Dongles, was not performing as required for patient safety.

123.   PCB'S above-described negligence was in reasonable probability a proximate cause of DONNA CAROL FERNIHOUGH'S severe, catastrophic life-changing injuries that have resulted in the losses and harms for which she has made a claim in this case.

124.   PCB'S negligent acts and/or omissions, as alleged above, were committed by or under the supervision of one or more of its vice-principals.

125.   Alternatively, PCB'S negligent acts and/or omissions, as alleged above, were approved or ratified by one or more of its vice-principals.

126.   Each of PCB'S negligent acts and/or omissions when viewed, separately and/or jointly, objectively from PCB'S standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to individuals interfacing with this medical device near major blood vessels, nerves, the eyes, and the brain.

127.   PCB, by and through its vice-principals, had actual, subjective awareness of the risk involved with incorporating the Multi Instrument Adapters/Dongles into use with the PRODUCT IN QUESTION, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of patients such as DONNA CAROL FERNIHOUGH undergoing sinuplasty procedures utilizing and relying upon the PRODUCT IN QUESTION, utilizing the PCB Multi Instrument Adapters/Dongles.

128.   PCB, by and through its vice-principals, had actual, subjective awareness of the risk involved with the ACCLARENT/INTEGRA PRODUCT IN QUESTION,

Copy from re:SearchTX

particularly when employing the PCB Multi Instrument Adapters/ Dongles but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of patients such as DONNA CAROL FERNIHOUGH undergoing sinuplasty procedures utilizing and relying upon the ACCLARENT/INTEGRA PRODUCT IN QUESTION to provide consistent and accurate navigation for ENT surgeons, particularly in the sphenoid sinus.

129.   PCB'S acts or omissions or conduct described above were jointly and severally a direct, proximate and substantial cause of DONNA CAROL FERNIHOUGH suffering severe, catastrophic life-changing injuries resulting in the losses and harms for which she has made a claim in this case.

## DAMAGES

130.   DONNA CAROL FERNIHOUGH has sustained permanent and debilitating injuries and damages as a direct and foreseeable result of DEFENDANTS' (ACCLARENT, INTEGRA, PRECISION and PCB)  joint and several negligence, as more specifically delineated above, including the negligence of the DEFENDANTS' respective vice-principals, agents, and employees, as alleged above.

131.   DONNA CAROL FERNIHOUGH has sustained injuries to the physical structure of her body and nervous system generally resulting in life-disrupting physical pain and mental anguish in the past, which in reasonable probability will continue in the future.  More particularly, DONNA CAROL FERNIHOUGH suffered an injury to her carotid artery and a substantial injury to her brain that has left her catastrophically and permanently impaired neurologically and physically. DONNA CAROL FERNIHOUGH has sustained diminution of life enjoyment in the past, which in reasonable probability will

Copy from re:SearchTX

continue in the future. She has sustained physical impairment in the past, which in reasonable probability will continue in the future. She has sustained physical disfigurement in the past, which in reasonable probability will continue in the future. She has sustained lost earnings and loss of his earning capacity in the past and in the future. DONNA CAROL FERNIHOUGH has sustained a loss of household services in the past and in the future.

132.    DONNA CAROL FERNIHOUGH has actually paid or incurred in the past reasonable and necessary expenses for medical and health care, treatment, therapy, consultation, and rehabilitation, and in reasonable probability, she will continue to incur such reasonable and necessary expenses in the future, including medications and medical services for treatment, care, monitoring, medical care and services, therapy, rehabilitation and environmental and functional oversight and management of activities of daily living, safety, health, and welfare.

133.    DONNA CAROL FERNIHOUGH seeks compensation from each of the DEFENDANTS for all the above-described actual damages deriving directly and foreseeably from the DEFENDANTS' joint and several negligence through their vice-principals, agents, and employees.  While DONNA CAROL FERNIHOUGH'S damages exceed the threshold requirements of this Court, she prefers to leave the determination of the actual amounts of these elements of damages and the total amount of just compensation solely to the province of the jury.   DONNA CAROL FERNIHOUGH requests that damages be awarded in present value, in conformance with the law and instructions given by the Court, in an amount determined by the jury to be fair and reasonable in view of the credible evidence considered by them at time of trial, without

*DONNA CAROL FERNIHOUGH v. ACCLARENT, INC., et al*
**Plaintiff's Original Petition**                                                        **Page 56 of 58**

Copy from re:SearchTX

regard to bias, sympathy or pity.

## DEMAND FOR JURY

**134.**    PLAINTIFF has submitted a jury fee and demands a jury trial of this cause.

## PRAYER

IN VIEW OF THE FOREGOING CONSIDERATIONS AND ALLEGATIONS, PLAINTIFF now prays that each DEFENDANT be cited to appear and answer herein, and that, after due process of law, PLAINTIFF has judgment for actual damages against all DEFENDANTS, jointly and severally, in an amount exceeding the minimum jurisdictional limits of this Court, together with prejudgment interest, post judgment interest, in the maximum amounts allowed by law, costs of Court and for such other and further relief, both general and special, in law and in equity, to which PLAINTIFF may be justly entitled, and for which she will ever pray. PLAINTIFF specifically reserves the right to amend and plead for such other and different amounts of damages to conform with future discovery or evidence adduced at trial.

Copy from re:SearchTX

Respectfully submitted,

**AVERSANO & GOLD**

*/s/ Donna M. Aversano*

_____

**DONNA M. AVERSANO**
State Bar No. 00783573
donna@CuttingEdgeJustice.com
**PAUL N. GOLD**
State Bar No. 08069700
paul@CuttingEdgeJustice.com
1123 Harvard St.
Houston, Texas 77008
(713) 426-5600 Telephone
(713) 426-5601 Facsimile

**ELIZABETH FRALEY**
State Bar No. 13180500
elizabeth_fraley@baylor.edu
One Bear Place #97288
Waco, TX 76798
(254) 710-3986 Telephone

**ATTORNEYS FOR PLAINTIFF**

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Corbin on behalf of Donna Aversano
Bar No. 783573
kelly@cuttingedgejustice.com
Envelope ID: 100896060
Filing Code Description: Petition
Filing Description: 25-05-15 Plaintiff's Original Petition
Status as of 5/15/2025 4:29 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Donna MAversano | | donna@cuttingedgejustice.com | 5/15/2025 3:33:45 PM | SENT |
| Paul NGold | | paul@cuttingedgejustice.com | 5/15/2025 3:33:45 PM | SENT |
| Aubrey MGarcia | | missioncontrol@cuttingedgejustice.com | 5/15/2025 3:33:45 PM | SENT |
| Kelly KingCorbin | | kelly@cuttingedgejustice.com | 5/15/2025 3:33:45 PM | SENT |
| Elizabeth Fraley | 13180500 | elizabeth_fraley@baylor.edu | 5/15/2025 3:33:45 PM | SENT |

Copy from re:SearchTX